## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Viking Cloud, Inc., a Delaware
corporation,

      Plaintiff,

v.

                                 Case No.

Chad Leedy, an individual, and
Interface Security Systems, LLC., a
Louisiana limited liability company,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

This is a complaint to enforce non-competition, non-solicitation, and non-disclosure obligations, to prevent interference with those obligations, and ultimately, to protect Plaintiff's valuable trade secrets and remedy the damages caused by their misappropriation. Defendant Chad Leedy worked for Plaintiff Viking Cloud, Inc. (f/k/a NuArx, Inc.) (referred to herein as "Viking Cloud" or the "Company") for six years as one of the Company's senior-most salesmen, during which time he gained in-depth knowledge of Viking Cloud's confidential, trade secret, and proprietary information, both in relation to Viking Cloud's products and to its customers. Despite having signed a valid and enforceable non-competition, non-solicitation, and confidentiality agreement, Leedy left Viking Cloud to work for Defendant

Interface Security Systems, LLC ("ISS"). Prior to hiring Leedy, ISS was a re-seller of Viking Cloud's products and services, however, almost immediately upon Leedy's hire ISS began to offer services that not only directly compete with Viking Cloud, but that use Leedy's knowledge of Viking Cloud's trade secrets to do so. Through this action Viking Cloud seeks to enforce Leedy's contractual obligations, enjoin Leedy and ISS from further using Viking Cloud's own proprietary information to unfairly compete with the Company, and recover damages for the harm inflicted by Defendants' malfeasance.

## THE PARTIES, JURISDICTION, AND VENUE

1.     Viking Cloud, Inc. is a Delaware corporation with its principal place of business in Southfield, Michigan.

2.     Chad Leedy is a citizen of the state of Texas.

3.     Interface Security Systems, Inc. is a Louisiana limited liability company. Upon information and belief, ISS's sole member is Interface Security Systems Holdings, Inc., a Delaware corporation whose principal place of business is in Earth City, Missouri.

4.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the action involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      The Court also has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Viking Cloud raises claims under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.,* and has supplemental jurisdiction over the remaining claims that arise under state law pursuant to 28 U.S.C. § 1367(a).

6.      The Court has specific *in personam* jurisdiction over Defendant Chad Leedy because this controversy arises out of Leedy's employment relationship with Viking Cloud, through which Leedy had continuous and systematic contacts within the State of Michigan, including regularly communicating with Viking Cloud employees located in Michigan, using a computer network located in Michigan, routine visits to the Michigan-located office to conduct business, and his solicitation of current Viking Cloud customers and employees located in Michigan.

7.      The Court has general *in personam* jurisdiction over Defendant ISS due to its systematic and continuous business operations within the state of Michigan, including, upon information and belief, employing Michigan residents and serving multiple customers located in Michigan, and maintaining a registered agent for service of process in the state of Michigan.

8.      This Court also has specific *in personam* jurisdiction over ISS because, as it relates to the claims set forth herein, upon information and belief ISS, acting through Leedy, is soliciting Viking Cloud's employees and customers with a physical presence in Michigan.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3), because Viking Cloud is located in this District, neither 28 U.S.C. § 1391(b)(1) nor (2) apply to circumstances at bar, and both Defendants are subject to personal jurisdiction in this Court.

## FACTS

### Viking Cloud's Business

10.    Viking Cloud provides compliance and cybersecurity services for businesses that rely on credit card transactions.

11.    Such businesses have ongoing compliance obligations under the various credit card processing agreements that they enter into with the major credit card companies, such as Visa and Mastercard.

12.    Additionally, heavy reliance on the internet for the processing and tracking of credit card transactions makes businesses that have a high volume of such transactions regular targets for bad actors seeking to gain access to valuable personal information.

13.    Viking Cloud offers unique and comprehensive solutions to businesses facing the twin challenges of credit card compliance and cybersecurity.

14.    Viking Cloud's solutions have been developed over the course of 14 years of research and development, and their success has provided Viking Cloud with a competitive advantage in its industry.

15.    Viking Cloud's solutions are based on its confidential commercial research and its proprietary development of software and methods for bundling its services.

16.    Viking Cloud also maintains long-term relationships with its customers and over the years it has developed records with detailed information about its customers and their specific business and commercial needs.

17.    Viking Cloud has a staff of 159, with employees that have specialized knowledge of the technical aspects of Viking Cloud's work, and other employees that have specialized knowledge of Viking Cloud's customers' specific needs.

18.    Viking Cloud takes steps to ensure the confidentiality of the foregoing confidential commercial information, including requiring its employees to sign confidentiality and non-disclosure agreements and safeguarding its proprietary information by not sharing that information outside of the Company.

### Defendant Chad Leedy's Role at Viking Cloud

19.    In April 2016, Defendant Chad Leedy returned to Viking Cloud (which at the time was known as NuArx, Inc.) after having left the Company for a short time.

20.    Upon re-joining Viking Cloud, Leedy executed several Proprietary Information and Invention Agreements ("PIIA"), with varying terms, each tailored to provide Viking Cloud with the maximum amount of protection available in the

separate jurisdictions in which it operates. Relevant to this dispute is the PIIA that is governed by the laws of Michigan, attached as Exhibit 1.

21.     Leedy's PIIA provides that he will neither compete with Viking Cloud nor solicit Viking Cloud's employees for one year after the conclusion of his employment with the Company. Specifically, Leedy agreed that:

> During the term of my employment and ***for a period of one year after the termination of such employment*** (whether such termination is with or without cause, or whether such termination is occasioned by me or by Company), ***I will not, directly or indirectly***:
>
> (a) ***engage*** or be interested, whether alone or together with or on behalf or through any other person or entity whether ***as a*** sole proprietor, partner, shareholder, agent, officer, director, **employee**, advisor, consultant, trustee, beneficiary or otherwise, ***in any business or organization which is a Competing Entity (as defined below) with Company within the United States***; or
>
> (b) own any capital or any other securities of, or have any other direct or indirect interest in, any entity which owns or operates a Competing Entity; or
>
> (c) ***attempt to hire, influence, or otherwise direct any employee of Company to leave employment of Company.***
>
> (d) A "Competing Entity" is defined as a business or operation that designs, develops, manufactures, sells, or distributes: (i) any products or services of a type that Company designed, produced, marketed, distributed, sold, serviced during my term of employment, or (ii) any products or services of the type that, during my term of employment, I

> developed or planned to develop, as evidenced by
> Company's written records.

*See Exhibit 1 at Section 5 (emphasis added).*

22.     Through the PIIA, Leedy also agreed to protect Viking Cloud's

confidential and proprietary information and to only use such information for the

benefit of the Company. Specifically, Leedy's PIIA provides that:

> I agree that all Inventions and all other business, technical
> and financial information (including, without limitation,
> the identity of and information relating to customers,
> consultants or employees) I develop, learn or obtain during
> the term of my employment that relate to Company or the
> business or demonstrably anticipated business of
> Company or that are received by or for Company in
> confidence, constitute "Proprietary Information." ***I will
> hold in confidence and not disclose or, except within the
> scope of my employment, use any Proprietary
> Information.***

*Id. at Section 4 (emphasis added).*

23.     Between April 2016 and November 2021, Leedy worked as a sales

representative for Viking Cloud, and at the time of his departure, he was reporting

directly to the Chief Revenue Officer, Mark Wayne.

24.     Through his role at Viking Cloud, Leedy gained detailed knowledge of

Viking Cloud's products, services, and customers.

25.     Leedy developed relationships with numerous Viking Cloud customers

on behalf of the Company and, in addition to contact information for the Company's

customers' decision-makers, Leedy gained and maintained in-depth knowledge of

the specific needs of those customers including pricing information and preferred product and service configurations.

**<u>Defendant Chad Leedy Leaves Viking Cloud</u>**
**<u>for Defendant Interface Security Systems</u>**

26.     In November 2021, Leedy notified Viking Cloud that he was leaving the Company to pursue an opportunity with ISS.

27.     At the time, ISS was a re-seller and an independent sales agent of Viking Cloud's products. Meaning that ISS was permitted under separate agreements to either sell a "white label" version of Viking Cloud's products and services under the ISS brand or to directly sell Viking Cloud-branded products and services on a commission basis. Viking Cloud and ISS's commercial relationship began in 2016.

28.     Prior to hiring Leedy, to Viking Cloud's knowledge, ISS was not selling a product or service that directly competed with Viking Cloud.

29.     In December 2021, Viking Cloud sent letters to Leedy and ISS informing both that Viking Cloud was aware of Leedy's employment at ISS and reminding both Leedy and ISS that Leedy remained bound by his non-competition, non-solicitation, and confidentiality obligations to Viking Cloud. *Exs. 2 and 3, December 2021 Letters.*

30.     Shortly after hiring Leedy, Viking Cloud became aware that ISS was offering for sale a solution that either directly competed with Viking Cloud or was

an unauthorized white labeling of Viking Cloud's products as ISS' own offering, and in doing so ISS was using Viking Cloud's SecurePCI trademark without permission. In addition to the SecurePCI trademark, ISS was also using Viking Cloud's Continuous Compliance Management ("CCM") brand name for a similar and competing product to Viking Cloud's CCM product without authorization.

31.    Leedy was responsible for selling CCM when he was employed by Viking Cloud and has detailed knowledge of Viking Cloud's proprietary information regarding the product.

32.    ISS ceased its illegal use of Viking Cloud's trademark after receiving a cease and desist letter, however upon information and belief, ISS, with Leedy's assistance, continues to sell a copycat solution to Viking Cloud's CCM, just without the infringing label.

33.    Viking Cloud has invested hundreds of thousands of dollars and many thousands of hours in developing its proprietary products and services, and it is from those investments that Viking Cloud has gained a competitive advantage in its market.

34.    Prior to Leedy's employment by ISS, ISS was merely a reseller of Viking Cloud's products, and did not offer any products of its own that competed with Viking Cloud's products.

35.    Upon information and belief, with the assistance of Leedy's unlawful

use of Viking Cloud's confidential and proprietary information, ISS is now actively using the Company's own proprietary information to compete directly with the Company.

36.     Leedy directly solicited one of Viking Cloud's Vice Presidents, who is also a key technical employee, between the time Leedy left the Company and when he started working at ISS.

37.     Upon information and belief, after joining ISS, Leedy indirectly, and through a recruiter for ISS, solicited a senior network security engineer who is also a key technical employee of Viking Cloud.

38.     Leedy's actions are in direct violation of his obligations under the PIIA and both the Defend Trade Secrets Act and the Michigan Uniform Trade Secrets Act.

39.     Viking Cloud, through counsel, sent cease and desist letters to Leedy and ISS on March 3 and 4, 2021, respectively, however as of this filing ISS has not responded at all to Viking Cloud, and Leedy has not responded other than to confirm receipt of Viking Cloud's letter to and request a copy of his PIIA. *Exs. 4 and 5, March 2021 Letters.*

## Count I
## Breach of the PIIA's Non-Competition Provisions
## (Defendant Chad Leedy)

40.     Viking Cloud incorporates by reference the foregoing allegations as if

fully set forth herein.

41.     The PIIA is a valid and enforceable contract under Michigan law.

42.     Under the terms of the PIIA Leedy was obligated to refrain from working for a Competing Entity for one year after the end of his employment with Viking Cloud.

43.     Less than two months after the conclusion of his employment with Viking Cloud, Leedy became employed by ISS and immediately helped to make ISS into a Competing Entity.

44.     Leedy's employment with ISS, which is now a Competing Entity under the terms of the PIIA, is a material breach of his obligation under the PIIA.

45.     By Leedy's breach of the PIIA, Viking Cloud has suffered damages in the form of:

        a.  loss of confidential and proprietary information;

        b.  loss of competitive advantage gained through its unique product features;

        c.  actual and potential loss of sales, revenues and profits; and

        d.  attorney fees and costs.

### Count II
### Breach of the PIIA's Non-Solicitation Provisions
### (Defendant Chad Leedy)

46.     Viking Cloud incorporates by reference the foregoing allegations as if fully set forth herein.

47.     The PIIA is a valid and enforceable contract under Michigan law.

48.     Under the terms of the PIIA Leedy was obligated to not solicit current Viking Cloud employees, directly or indirectly, for one year after the end of his employment with Viking Cloud.

49.     Within four months of the conclusion of his employment with Viking Cloud, Leedy directly solicited one of the Company's key technical employees.

50.     Also within four months of the conclusion of his employment with Viking Cloud, upon information and belief, Leedy indirectly solicited a different key technical employee of the Company by inducing an ISS recruiter to contact that employee.

51.     Leedy's solicitation of Viking Cloud employees is a material breach of his obligations under the PIIA.

52.     By Leedy's breach of the PIIA, Viking Cloud has suffered damages in the form of:

      a.  lost productivity of the solicited employees;

      b.  lost profits due to diversion of resources to address the breach; and

      c.  attorney fees and costs.

### Count III
### Breach of the PIIA's Confidential and Proprietary Information Provisions
### (Defendant Chad Leedy)

53.     Viking Cloud incorporates by reference the foregoing allegations as if

fully set forth herein.

54.     The PIIA is a valid and enforceable contract under Michigan law.

55.     Under the terms of the PIIA Leedy was obligated to protect Viking Cloud's confidential and proprietary information and to use such information solely for Viking Cloud's benefit.

56.     Leedy, in his role at ISS, is currently using his knowledge of Viking Cloud's confidential and proprietary information for the benefit of himself and ISS.

57.     Specifically Leedy is using his detailed knowledge of Viking Cloud's products and services to help ISS develop and sell products and services that directly compete with those of Viking Cloud.

58.     Leedy is also using his detailed knowledge of Viking Cloud's customer contact information and customer needs and preferences to help ISS sell its competing products and services to Viking Cloud's customers.

59.     Leedy's actions set forth above are material breaches of his confidentiality obligations under the PIIA.

60.     By Leedy's breach of the PIIA, Viking Cloud has suffered damages in the form of:

     a.  loss of confidential and proprietary information;

     b.  loss of competitive advantage gained through its unique product features;

     c.  actual and potential loss of sales, revenues and profits; and

d.  attorney fees and costs.

**Count IV**
**Tortious Interference With Contractual Relationship Regarding Defendant**
**Chad Leedy's PIIA Obligations**
**(Defendant Interface Security Systems, Inc.)**

61.    Viking Cloud incorporates by reference the foregoing allegations as if fully set forth herein.

62.    The PIIA is a valid and enforceable contract between Leedy and Viking Cloud.

63.    ISS had knowledge of the existence and relevant terms of the PIIA, as Viking Cloud sent ISS a letter informing it of such upon learning of Leedy's employment with ISS. *Ex. 2, December 2021 Letter to ISS.*

64.    Since beginning work for ISS, Leedy has breached his obligations under the PIIA on behalf of and to the benefit of ISS.

65.    ISS, upon information and belief, has instigated Leedy's breaches of the PIIA without justification and with the malicious intent of benefitting from Leedy's knowledge of Viking Cloud's confidential and proprietary information.

66.    As a result of Leedy's breaches, as instigated by ISS, Viking Cloud has suffered damages in the form of:

a.   loss of confidential and proprietary information;

b.  loss of competitive advantage gained through its unique product features;

c.  actual and potential loss of sales, revenues and profits; and

d.  attorney fees and costs.

**Count V**
**Misappropriation of Trade Secrets In Violation Of**
**The Defend Trade Secrets Act, 18 U.S.C. § 1331 *et seq.***
**(All Defendants)**

67.     Viking Cloud incorporates by reference the foregoing allegations as if fully set forth herein.

68.     Viking Cloud owns and possesses certain confidential, proprietary, and trade secret information, as alleged above. Among those trade secrets are the customer lists and key customer contacts, customer preferences, and Viking Cloud's methods, techniques and processes for providing its compliance and cybersecurity solutions. Those trade secrets are not publicly disclosed by Viking Cloud.

69.     Viking Cloud's confidential, proprietary, and trade secret information related to products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

70.     Viking Cloud has taken reasonable measures to keep such information secret and confidential. For example customer information is kept in a password protected database open only to employees with a "need to know." Furthermore, employees with access to the trade secret information at issue in this matter all are required to execute a PIIA or other Protective Covenants Agreement similar to the ones executed by Leedy. Computers, tablets, and cell phones provided to Viking

Cloud employees are encrypted, password protected, and subject to other security measures.

71.    Due to these security measures, Viking Cloud's confidential, proprietary, and trade secret information is not available through any legitimate means.

72.    Viking Cloud's confidential, proprietary and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

73.    In violation of Viking Cloud's rights, Defendants misappropriated Viking Cloud's confidential, proprietary and trade secret information as alleged herein. Defendants' misappropriation was intentional, knowing, willful, and malicious and in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1331 *et seq*.

74.    As the direct and proximate result of Defendants' conduct, Viking Cloud has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Viking Cloud's remedy at law is inadequate, Viking Cloud seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other

legitimate business interests. Viking Cloud's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

75.     Viking Cloud has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorney's fees.

**Count VI**
**Misappropriation of Trade Secrets In Violation Of**
**the Michigan Uniform Trade Secrets Act, M.C.L. 445.1901 *et seq.***
**(All Defendants)**

76.     Viking Cloud incorporates by reference the foregoing allegations as if fully set forth herein.

77.     Viking Cloud owns and possesses certain confidential, proprietary, and trade secret information, as alleged above. Among those trade secrets are the customer lists and key customer contacts, customer preferences, and Viking Cloud's methods, techniques and processes for providing its compliance and cybersecurity solutions. Those trade secrets are not publicly disclosed by Viking Cloud.

78.     Viking Cloud has taken reasonable measures to keep such information secret and confidential. For example customer information is kept in a password protected database open only to employees with a "need to know." Furthermore, employees with access to the trade secret information at issue in this matter all are required to execute a PIIA or other Protective Covenants Agreement similar to the ones executed by Leedy. Computers, tablets, and cell phones provided to Viking

Cloud employees are encrypted, password protected, and subject to other security measures.

79.   Due to these security measures, Viking Cloud's confidential, proprietary, and trade secret information is not available through any legitimate means.

80.   Viking Cloud's confidential, proprietary and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

81.   In violation of Viking Cloud's rights, Defendants misappropriated Viking Cloud's confidential, proprietary and trade secret information as alleged herein. Defendants' misappropriation was intentional, knowing, willful, and malicious and in violation of the Michigan Uniform Trade Secrets Act, M.C.L. 445.1901 *et seq.*

82.   As the direct and proximate result of Defendants' conduct, Viking Cloud has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Viking Cloud's remedy at law is inadequate, Viking Cloud seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other

legitimate business interests. Viking Cloud's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

83.    Viking Cloud has been damaged by all of the foregoing and is entitled to an award of exemplary damages.

**Count VII**
**Civil Conspiracy**
**(All Defendants)**

84.    Viking Cloud incorporates by reference the foregoing allegations as if fully set forth herein.

85.    Leedy and ISS, acting in concert, have caused harm to Viking Cloud as set forth above.

86.    Leedy and ISS have pursued their own business interests by taking unlawful action against Viking Cloud, including breaching Leedy's obligations under the PIIA and misappropriating Viking Cloud's trade secrets.

87.    Leedy and ISS acted together in willful disregard of the knowledge that Leedy is bound by an enforceable contract that protects Viking Cloud's legitimate business interests.

88.    Leedy and ISS acted together in willful disregard of the knowledge that Viking Cloud's trade secrets are protected by both federal and Michigan law

89.    As a result of Leedy and ISS's concerted unlawful actions, Viking Cloud has suffered damages in the form of:

a. loss of confidential and proprietary information;

b. loss of competitive advantage gained through its unique product features;

c. actual and potential loss of sales, revenues and profits; and

d. attorney fees and costs.

## **Request for Relief**

**WHEREFORE,** Plaintiff Viking Cloud, Inc. respectfully requests that this Court enter an Order granting the following relief:

A. Monetary damages in whatever form and amount in excess of $75,000 to which it is found to be entitled;

B. Preliminary and permanent injunctive relief against both Defendants prohibiting the continued breach of Defendant Chad Leedy's contractual obligations;

C. Preliminary and permanent injunctive relief against both Defendants prohibiting the continued interference with Viking Cloud's contractual relationships by both Defendants;

D. Preliminary and permanent injunctive relief against both Defendants prohibiting the continued misappropriation of Viking Cloud's trade secrets;

E. Exemplary damages;

F. Attorneys' fees and costs; and

G. Interest

## **JURY DEMAND**

Viking Cloud, Inc. demands a jury trial on all issues so triable.


DYKEMA GOSSETT PLLC

Dated: April 5, 2022                       By: */s/ Brett M. Gelbord*
                                              James F. Hermon (P53765)
                                              Brett M. Gelbord (P79312)
                                              Attorneys for Plaintiff
                                              Dykema Gossett PLLC
                                              400 Renaissance Center
                                              Detroit, Michigan 48243
                                              Telephone: (313) 568-6800
                                              JHermon@dykema.com
                                              BGelbord@dykema.com

4868-3192-8595.5